RAFAEL SAURÍ, Plaintiff and Appellant, v. JOSÉ SAURÍ ET AL., Defendants and Appellants.

No. 3549. Argued November 15 and 16, 1927.—Decided July 28, 1928.

*Tous Soto* & *Pérez Marchand* for the plaintiff-appellant. *F. Parra Capó, José* and *Alberto S. Poventud* for the defendant-appellants.

MR. JUSTICE WOLF delivered the opinion of the court.

Rafael Saurí presented a complaint wherein, as a first cause of action, he sought the division of property held in common. In a second cause of action he claimed compensation for services rendered. The District Court of Ponce rendered judgment in favor of Rafael Saurí with respect to the first cause of action and rendered judgment for the defendants in the second cause of action. The complainant and the defendants have appealed separately, but have very properly presented a single transcript. We shall consider the appeal of the complainant involving the second cause of action.

Upon the death of Félix Saurí y Vivas in the testamentary partitional proceedings one-half of his property came to belong to his widow and the other half to his three children,

or one-sixth to each of said children. In the 17th clause of the partition deed it was agreed that the property should remain intact, not only with regard to the real property but also with regard to the personal property. The effect of all the proceedings was to create a community with an undivided interest in all of the succession of Félix Saurí, including the mother. The community so created or continued went on until José and Carmen Saurí notified their brother Rafael Saurí that they did not care to remain longer in the community.

The administration of the community property was left by agreement to Rafael Saurí, who is the complainant and appellant in this branch of the suit. In his complaint he cites his services, the great amount of work he had done and the great benefits to the community, amounting to nearly half a million dollars that had accrued during this period; and that for all this work he had been paid only $30 a week. He admits that no agreement for a higher compensation had been agreed upon and says that $6,000 a year would be a reasonable compensation. After an answer and a trial the District Court of Ponce rendered judgment against the complainant on this claim for compensation.

The theory of the court was that during his lifetime Félix Saurí received $30 a week as one of the administrators of Saurí & Subirá; that upon his death, as had been formerly agreed upon, and then with the consent of everyone, Rafael Saurí substituted for his father; that Rafael Saurí at the time of his acceptation of the administration did nothing to modify the compensation, nor did he do anything thereafter to claim a higher one; that when the liquidation of the firm of Saurí & Subirá was finally terminated the complainant continued to administer the property of the succession, receiving the same compensation. In this last named regard the court accepted the testimony of José Saurí and then found that at no time did Rafael Saurí make any sign (*manifestación*), effort (*gestión*) or do any act to show his dis-

sent or lack of agreement with respect to his remuneration or credit as such administrator.

The only assignment of error is as follows:

"The court erred in holding that acceptance by Rafael Saurí of the position of manager of the property of Saurí & Subirá in representation of the Succession of Saurí, with the same powers formerly held by the deceased partner Félix Saurí, implies the waiver by Rafael Saurí of a higher remuneration than that of $30 weekly received by his father, Félix Saurí."

From the evidence the court was completely justified in arriving at its theory of the case. The evidence was clear that Rafael Saurí received the $30 weekly that his father had received in his lifetime, that under a direct stipulation he continued to receive this sum of $30 during the continuance and liquidation of Saurí & Subirá and that after the firm's dissolution he either directly consented to receive from his mother, brother and sister the sum of $30 or silently accepted this amount without protest or indication of his right to higher compensation. So much is this so that we think the complainant practically accepted the facts and based his claim for compensation on a *quantum meruit*.

The complaint in this regard sets up some of the undisputed antecedent facts or perhaps others and then sets forth that the occupation and profession of the complainant was that of a farmer and administrator of agricultural properties; sets up the various services of the complainant and the benefits accrued to the community and then says that the complainant has not received during his administration any remuneration for his work, activities and services as administrator, having solely taken for his daily expenses of a trip from Ponce to the lands and expenses indispensable and incident to his occupation a weekly amount no greater than $30. Here the complaint also says, "by agreement with his co-owners." Then the complaint goes on to say that the annual sum of $6,000 would be a reasonable amount for his services, from which the amount received weekly should be

deducted, and he proceeds to claim $36,000 with a deduction of $7,230. From the complaint itself it is evident that Rafael Saurí was receiving $30 a week as remuneration and he deducts it from his claim for reasonable compensation.

Section 1613 of the Civil Code provides:

"In the absence of an agreement to the contrary, the agency is presumed to be gratuitous.

"Nevertheless, if the agent has for an occupation the performance of services of the kind to which the agency refers, the obligation of compensating him is presumed."

We hold or find that the case of Rafael Saurí does not fall under this section. It was agreed that he should take charge of the community property, but he was not employed as a farmer or as an agricultural agent in the sense of the statute. He was administering his own property along with that of his mother, brother and sister and was allowed to do so, we may say, just as the administration might have been conferred upon his mother, who owned a half of the community. We are only discussing the right to compensation without agreement. In general, where close relatives in a community are concerned, or even in any kind of co-ownership, the consent or agreement by the others that one should administer does not imply a promise to pay, the familiar basis of the action of assumpsit in England and the United States. Even in the United States no contract for reasonable services would under the circumstances be implied. In Porto Rico an agreement for services should be explicit, unless one falls under some exception.

Section 1486 of the Civil Code, as amended, is no exception. It provides:

"The services of servants and laborers may be contracted for a fixed period of time, or without a fixed period. A hiring for life shall be void. Professional services, as regards the remuneration therefor, shall be subject to the agreement of the parties; and where there is no agreement as to remuneration. and a disagreement should arise respecting the same, the party entitled to such remuneration

'may sue and recover from the adverse party the reasonable value of such services in any court of competent jurisdiction."

The professional services there referred to do not cover this case, not only for the general reasons heretofore assigned but because the word "professional" must have some meaning. It applies to persons who have a distinct profession, and not to farmers, mechanics or workmen. Were it otherwise everyone could claim a profession.

More particularly we agree with the court and the appellees that there was a distinct agreement for remuneration and the appellant has presented to us no fact or argument that would permit an additional compensation.

What really happened, as indicated in the testimony of Rafael Saurí, is that he just took charge relying on his mother, brother and sister doing the right thing by him. He failed, as many another man has failed, to have a specific agreement. Probably if affairs had gone on amicably his family would not have disputed a claim for increased compensation, but there is also a fair chance that he would not have bothered to claim any. On the other hand, his relatives were dissatisfied with him as administrator and particularly with his failure to employ a bookkeeper. Some other dissatisfactions were expressed. His relatives did not, however, question his honesty. We say this much because when a man is treating even with relatives he should be specific. Otherwise, when a doubt arises as to reasonable value of his services, the latter may be combatted. If the defendants had been satisfied this whole suit probably would never have arisen. It can not affect the case, for example, that the complainant was receiving $3,000 as salary from Saurí & Subirá or that his mother was willing to pay him $3,000.

While the court is satisfied with the foregoing conclusions, we regret our inability to develop this branch of the case more elaborately, but time has failed by reason of the accumulation of work. So much is this so that we have been totally unable satisfactorily to dispose of the other

branch of the case or the appeal of the defendants, and so far there are divergent ideas among us. Our original thought was to have the case heard by the whole court and we set it for November last. Owing to the fact that the case could only be heard by four judges, we deem it advisable to set the other branch of the case again before the full court.

Therefore, we hold that the appeal of Rafael Saurí is not well taken, and the judgment, in so far as it dismisses the second cause of action mentioned in the complaint, should be affirmed.

Mr. Justice Texidor took no part in the decision of this case.